IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| KENNETH RUTHERFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| PEORIA PUBLIC SCHOOLS DISTRICT ) | |
| 150, ) | |
| ) | |
| Defendant. ) | **Jury Trial Demanded and** |
| ) | **Equitable Relief Sought** |

**COMPLAINT**

COMES NOW the Plaintiff, Kenneth Rutherford [hereafter "Rutherford"], and for his cause of action against the Defendant, Peoria Public Schools District 150 (hereafter the "District 150"), states as follows:

**Nature of Complaint**

1. In this complaint Rutherford alleges that the District 150 violated his rights under the Family Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* (hereafter the "FMLA"). Rutherford alleges that District 150 violated his rights under the FMLA in three separate respects – (1) by failing to provide him with FMLA leave when he was clearly eligible for said leave; (2) by refusing to return him to his position of employment at the time his leave expired; and (3) by terminating his employment.

**Jurisdiction**

2.  Rutherford's claim is premised upon a federal statute – the FMLA. As such, this Court has jurisdiction to entertain this claim under 28 U.S.C. § 1331.

**Venue**

3.  The venue of this Court to entertain the issues raised in this case is appropriate by virtue of 28 U.S.C. § 1391(b), because both Rutherford and District 150 engage in business activities within the judicial district of this Court and the claims giving rise to the above captioned proceeding did occur within the judicial district of this Court.

**Allegations**

4.  District 150 is a unit of local government that is responsible for the administration of the public schools system in Peoria, Illinois. At all times relevant to this complaint, it has employed in excess of one thousand full-time employees in Peoria, Illinois.

5.  Rutherford was formerly employed by District 150 as a custodian. He commenced his employment with District 150 on October 8, 1997.

**Rutherford's injury**

6.  On November 24, 2010, Rutherford was injured while at work when a scaffold with a painter and paint fell and landed on him.

7.  Rutherford immediately reported the incident to his immediate

supervisor, Dave Myers.

8. As a result of the accident, Rutherford sustained damage to his neck, lower back and Achilles tendon. He was initially treated by Dr. Hauter. Ultimately, he would be diagnosed as suffering from lumbago.

9. Dr. Hauter ordered Rutherford to participate in physical therapy. Rutherford attended physical therapy sessions on November 30, 2010, December 9, 2010, December 16, 2010, December 20, 2010, December 22, 2010, December 29, 2010, and January 6, 2011.

10. On December 8, 2010, Rutherford began treating at Trotter Chiropractic.

11. On January 7, 2011, Rutherford began treating with Dr. Richard Kube.

12. Dr. Kube ordered a MRI on Rutherford for January 12, 2011. The MRI indicated that he had degenerative changes in his spine.

13. On February 16, 2011, based upon an order from Dr. Kube, Rutherford was given an epidural injection to treat his back.

14. Additionally, Dr. Kube, recommended that Rutherford participate in further physical therapy. Rutherford commenced a second round of physical therapy on February 14, 2011.

15. Rutherford continued with his physical therapy and continued to have problems with his neck and his back.

16. On March 29, 2011, Rutherford attended an appointment with

Dr. Kube. At the conclusion of that appointment, Dr. Kube gave Rutherford a note indicating that he had a diagnosis of "lumbargo" and that he had restrictions on what job duties he could perform. Specifically, he was limited in lifting 50 pounds. (Ex. 1).

17. On March 31, 2011, Rutherford provided a copy of Dr. Kube's March 29th work restrictions to his immediate supervisor, Dave Myer.

18. Prior to March 31, 2011, Rutherford had continued to work his normal schedule with District 150.

19. After Rutherford provided him with a copy of Dr. Kube's restrictions, Dave Myer verbally advised him that he would not be allowed to work for District 150 until he was released to work without any restrictions.

**FMLA's mandate that leave be provided and obligations on employers**

20. The FMLA mandates that employers provide up to twelve weeks of unpaid leave to eligible employees "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2611(a)(1)(D).

21. The FMLA defines an eligible employee as one who has been employed: "for at least12 months by the employer" and has worked "for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A).

22. As of March 31, 2011, Rutherford had been employed by District 150 for a period in excess of one year.

23. In the twelve months that immediately preceded March 31, 2011, Rutherford worked in excess of 1,250 hours for District 150.

24. Under the FMLA, an employee has a "serious health condition" when they have an injury or impairment that requires "continuing treatment by a health care provider."

25. As of March 31, 2011, Rutherford was suffering from a "serious health condition" in that he had a back condition that was requiring continuing and ongoing treatment.

26. On April 14, 2011, Mr. Myer's statements were confirmed in writing. In a letter on that date Stephen P. Kelly, legal counsel for District 150, wrote to Rutherford's legal counsel advising that he would not be allowed to work under restrictions. (Ex. 2).

27. The FMLA regulations promulgated by the United States Department of Justice require an employer to provide its employees notice that they are eligible for FMLA leave. Specifically, the regulations provide:

> When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances. 29 CFR § 825.300(b).

28. Rutherford providing his supervisor with a copy of his work restrictions (on March 31, 2011) was sufficient to place District 150 on notice that he might need leave for a FMLA-qualifying reason.

29. Despite being placed on notice and despite the fact that it would not allow Rutherford to continue to work, District 150 did not provide him with any information (written or otherwise) about his rights under the FMLA.

30. The FMLA regulations further provide that an employer is required to provide an employee with a document that outlines their rights and responsibilities during the course of their FMLA leave. 29 CFR § 825.300(c).

31. District 150 did not provide Rutherford with any document that would advise him of his rights and responsibilities under the FMLA.

**Rutherford's attempts to be returned to work**

32. Rutherford met with Dr. Kube again on April 12, 2011.

33. On May 31, 2011, Rutherford met with Dr. Kube yet again. At the conclusion of that meeting Dr. Kube prepared a document indicating that Rutherford was being released to return to work and the only restriction on his ability to do his job was a indication that the maximum weight he could lift was between 50 pounds and 100 pounds. (Ex. 3).

34. Rutherford's position of employment with District 150 only required that he be able to lift a maximum of 50 pounds. As such, as of May 31, 2011, Rutherford had no restrictions that would impact his ability to perform his job duties.

35. On June 2, 2011, Rutherford personally delivered Dr. Kube's May 31st work status report (Ex. 3) to both his supervisor and to District 150's human resources office.

36. On June 2, 2011, both Rutherford and his union requested that District 150 immediately reinstate him to his employment.

37. Rutherford and his union subsequently made multiple oral requests to District 150 that he be reinstated to his position.

38. District 150 did not respond to Rutherford's requests that he be reinstated to his position of employment.

39. On July 20, 2011, Rutherford and his union filed a written grievance regarding the fact that he had not been reinstated to his position of employment. (Ex. 4). The grievance specifically requested that Rutherford be "returned to work immediately."

40. The written grievance was received by Rutherford's immediate supervisor, Dave Myer, on July 20, 2011.

41. District 150 ignored Rutherford's grievance and continued to refuse to reinstate him to his employment.

42. In October of 2011 both Rutherford and his union again verbally requested that he be reinstated to his position with District 150.

43. District 150 continued to ignore Rutherford's requests that he be reinstated.

44. On December 2, 2011, Rutherford prepared and filed a charge with the Illinois Educational Labor Relations Board. (Ex. 5). In that charge he indicated that he had been released to return to work but that he had not been allowed by District 150 to work. As a remedy, Rutherford requested, in part,

that he be "returned to work immediately."

45. District 150 received a copy of Rutherford's December 2, 2011, filing with the Illinois Educational Labor Relations Board.

46. On June 27, 2012, Rutherford sent an email to District 150's human resources department. The email stated, in part:

> It has been a year since my release and I haven't received any correspondence from the district as to when I can return to work. Please let me know if there's anything you need from me as I am eagerly awaiting my return to work date. (Ex. 6).

47. District 150 ignored Rutherford's June 27, 2012, email.

48. On July 17, 2012, Rutherford sent an email following up on his June 27, 2012, email. (Ex. 7).

49. District 150 ignored Rutherford's July 17, 2012, email as well.

50. On August 20, 2012, Rutherford, in a further attempt to be returned to his employment, filed a charge of discrimination against District 150. (Ex. 8). Rutherford's charge was filed with the Equal Employment Opportunity Commission. Rutherford's EEOC claim alleged that he was not being returned to his position of employment.

51. District 150 received a copy of Rutherford's complaint that he filed with the EEOC.

**FMLA's obligations to reinstate an employee to their former position**

52. The FMLA mandates that an employee is entitled to be reinstated

to his former position at the time their need for leave concludes.  29 C.F.R. § 825.214.

53.	District 150 was obligated to reinstate Rutherford to his former position at the time they knew he was able to return to work.

**Rutherford's termination**

54.	Rutherford continued to have District 150 reinstate him to his position of employment.  On July 18, 2013, he sent another email to District 150.

55.	Shortly after Rutherford sent his July 18, 2013, email, District 150 responded.  In a letter (not dated), District 150's director of employee services, Geri Hammer, wrote:

> This letter is in response to your email directed to Dr. Lathan, dated July 18, 2013, requesting an appointment to discuss your request to return to work. It is the District's position that you abandoned your job, because you failed to contact the District in a reasonably timely manner regarding any request to return to work. (Ex. 9).

56.	Rutherford never abandoned his position and was, in effect, terminated from his employment in July of 2013.

**FMLA prohibition against terminating an employee**

57.	The FMLA prohibits an employer from retaliating against an employee who has taken protected leave. 29 C.F.R. § 825.220.

58.	District 150's termination of Rutherford violates his rights under the FMLA and would not have occurred had Rutherford not taken a leave of

absence that was protected under its terms.

59. Despite multiple requests, District 150 has continually refused to reinstate Rutherford to the position he held prior to March 31, 2011 – or any other position.

**Willful violation of the FMLA**

60. District 150's actions constitute a willful violation of the FMLA.

61. Rutherford provided District 150 with notice of his need to take a protected leave (see paragraph 17) and District 150 failed to provide him with the notices mandated by the FMLA regulations.

62. District 150's actions are compounded because it had legal counsel representing its interests at that time (see paragraph 26).

63. Rutherford repeatedly sought to be reinstated to his former position once he had sufficiently recovered from his injury (see paragraphs 32-51). Despite his repeated requests, Rutherford was ignored by District 150.

64. The FMLA mandates that an employer is obligated to provide an eligible employee with "written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." 29 C.F.R. 825.300(c)(1).

65. District 150 entirely failed to provide Rutherford with a notice of his rights under this provision.

66. The FMLA further requires that an employer must engage in communications with its employees about their leave rights and be responsive

to their questions.  29 C.F.R. 825.300(c)(5).

67. District 150 refused to engage in communications with Rutherford about his need for or his return from a medically necessary leave of absence.

68. In creating its justification for not reinstating his employment, District 150 has falsely stated that Rutherford did not communicate with them about his desire to return to work.

**Damages**

69. Rutherford has been injured as a result of District 150's actions.

70. At the time Rutherford last worked, March 31, 2011, he was being paid an hourly wage that was negotiated and made part of a collective bargaining agreement.

71. Rutherford has incurred expenses in the form of health care expenses that he would not have incurred had his rights under the FMLA not been violated.

72. Rutherford has lost other employment benefits as a result of the violations of his rights under the FMLA.

Wherefore, Rutherford requests that this Court enter judgment in his favor and against District 150 and find that District 150 violated his rights under the FMLA.  Rutherford further requests that the judgment provide him with the following relief:

(a) A mandatory injunction directing District 150 to reinstate Rutherford to the position of employment that he would have held had it not

been for its unlawful conduct;

  (b)  Award Rutherford his costs in bringing this suit;

  (c)  Award Rutherford damages sufficient to compensate him for economic losses suffered as a result of the aforementioned conduct alleged in this complaint pursuant to 29 U.S.C. § 2617(a)(1)(A)(i);

  (d)  Liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

  (e)  Pre-judgment interest pursuant to 29 U.S.C. § 2617(a)(1)(A)(ii);

  (f)  Assess against the District 150 the reasonable attorney fees incurred by Rutherford in bringing this claim pursuant to 29 U.S.C. § 2617(a)(3); and

  (g)  Provide such other relief as the Court deems to be equitable and just.

**THE PLAINTIFF, KENNETH RUTHERFORD, RESPECTFULLY REQUESTS THAT ALL ISSUES RAISED IN THIS COUNT WHICH MAY BY LAW BE PROPERLY TRIED BEFORE A JURY BE TRIED BY A JURY. THIS COMPLAINT ALSO SEEKS INJUNCTIVE RELIEF THAT SHOULD BE DETERMINED BY THE COURT**

               Kenneth Rutherford

               By: /s/ John A. Baker
                 His Attorney

John A. Baker
Baker, Baker & Krajewski, LLC
415 South Seventh Street
Springfield, Illinois 62707
Telephone:  (217) 522-3445
Facsimile:  (217) 522-8234
E-mail:  johnbakerlaw@gmail.com